**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | | |
|---|---|---|
| Timothy Gadson, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No.: 4:05-00957-CWH |
| | ) | |
| vs. | ) | |
| | ) | |
| United States of America, | ) | **ORDER** |
| | ) | |
| Respondent. | ) | |
| | ) | |

On March 28, 2005, pursuant to 28 U.S.C. § 2255, the petitioner commenced this pro se action to vacate, set aside, or correct his conviction and sentence. On August 10, 2005, the government moved for summary judgment. On August 10, 2005, the Court issued a Roseboro order advising the petitioner of summary judgment dismissal procedure. On September 14, 2005, the petitioner filed his opposition to the government's motion for summary judgment. This matter is now before the Court for disposition.

**I. BACKGROUND AND PROCEDURAL HISTORY**

The investigation in the petitioner's case focused on a gang that robbed drug dealers in the Pee Dee area of South Carolina over a period of several years. On November 5, 2001, a federal grand jury charged the petitioner in a nine count indictment. Count 1 charged the petitioner with conspiracy to possess with intent to distribute and distribution of in excess of 50 grams of cocaine base, "crack cocaine." Count 8 charged the petitioner with Hobbs Act Robbery in violation of 18 U.S.C. § 1951. The remaining counts charged several violations of 18 U.S.C. § 924(c), possession of a firearm in furtherance of drug trafficking. The petitioner proceeded to trial, and

on December 6, 2001, a jury found him guilty of Counts 1, 3, 4, 6, 8, and 9. On September 5, 2002, the Court sentenced petitioner to life in prison followed by 10 years supervised release. On October 2, 2002, the Court entered judgment. The petitioner appealed his conviction and sentence to the Fourth Circuit Court of Appeals ("Fourth Circuit"), who affirmed the trial court's decision in an unpublished *per curiam* opinion dated November 18, 2003. The petitioner filed a petition for writ of certiorari to the Supreme Court, who denied the petition on March 29, 2004.

In his §2255 motion, the petitioner alleges the following grounds of error: (1) the trial court lacked jurisdiction over the Count 8 Hobbs Act violation, and (2) trial counsel was ineffective.

**II. JURISDICTION OF THE TRIAL COURT**

The petitioner claims that the government failed to demonstrate that the robbery affected interstate commerce and that the trial court therefore lacked jurisdiction over Count 8 of the indictment. The Hobbs Act prohibits robbery or extortion that "in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce." 18 U.S.C. §1951(a). A Hobbs Act violation requires proof of two elements: (1) the underlying robbery or extortion crime, and (2) an effect on interstate commerce. Stirone v. United States, 361 U.S. 212, 218 (1960).

In his motion to vacate, the petitioner alleges that the government did not adequately prove that robbery of a drug dealer affects interstate commerce. The Fourth Circuit analyzed this issue in United States v. Williams, 342 F.3d 350 (2003). Wesley Williams (Williams) conspired with others to rob drug dealers for their drugs and money. The conspirators successfully obtained money or drugs in this manner on several occasions. A jury found Williams guilty of Hobbs Act

Robbery because Williams and his co-conspirators robbed and killed a drug dealer. Williams appealed to the Fourth Circuit, who held that robbery of a drug dealer affected interstate commerce as required under the Hobbs Act. United States v. Williams, 342 F.3d at 353-54.

Under the Commerce Clause, Congress has plenary authority to regulate: (1) the use of the channels of interstate commerce," (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities," and (3) "those activities having a substantial relation to interstate commerce." United States v. Lopez, 514 U.S. 549, 558-59 (1995). Congress exercised the full extent of this authority in the Hobbs Act, which "speaks in broad language, manifesting a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery, or physical violence. The Act outlaws such interference 'in any way or degree.'" Stirone v. United States, 361 U.S. at 215.

The Second, Fourth, Fifth, Sixth, Seventh, Ninth, and Eleventh Circuit Courts of Appeal all apply the Hobbs Act whenever the instant offense has at least a minimal effect on interstate commerce. United States v. Jamison, 299 F.3d 114, 118 (2d Cir. 2002); United States v. Spagnolo, 546 F.2d 1117, 1119 (4th Cir. 1976); United States v. Robinson, 119 F.3d 1205, 1208 (5th Cir. 1997); United States v. Smith, 182 F.3d 452, 456 (6th Cir. 1999); United States v. Marrrero, 299 F.3d 653, 654-56 (7th Cir. 2002); United States v. Atcheson, 94 F.3d 1237, 1241-43 (9th Cir. 1996); United States v. Castleberry, 116 F.3d 1384, 1387 (11th Cir. 1997). The Supreme Court has not disturbed these rulings. Furthermore, robbing drug dealers is a "quintessentially economic activity that, taken in the aggregate, substantially impacts the interstate commerce." United States v. Williams, 342 F.3d at 354 (*citing* United States v. Guerra,

164 F.3d 1358, 1361 (11th Cir. 1999). The petitioner has not shown that his robbery of drug dealers did not affect interstate commerce. His argument is without merit, and he is not entitled to relief on these grounds.

The petitioner claims that this court is without jurisdiction. The United States Federal District Courts have original and exclusive jurisdiction over all offenses against the laws of the United States. 18 U.S.C. §3231. The petitioner's prosecution and conviction rests upon 21 U.S.C. §§ 924(c) and 1951. Therefore, the petitioner's claim of lack of jurisdiction does not stand, and the petitioner fails to present extraordinary circumstances warranting deviation from this general rule.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

The petitioner alleges that his trial counsel was ineffective because: (1) the trial court improperly sentenced the petitioner, (2) multiple counts for 18 U.S.C. §924(c) violations constituted double jeopardy, and (3) the trial court improperly charged the jury.

In claims of ineffective assistance of counsel, a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland v.Washington, 466 U.S. 668, 689 (1984). The Strickland Court established a standard for determining when counsel has performed in a manner so defective as to be deemed a violation of the defendant's constitutional rights:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be

> said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

Strickland, 466 U.S. at 687.

In evaluating an attorney's performance, the proper standard is that of "reasonably effective assistance," and a criminal defendant must show that his attorney's representation fell below an objective standard of reasonableness. Id. at 687-88. Strickland also emphasized that "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689.

In addition to establishing that counsel was deficient, the petitioner also must show prejudice. The petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. With this legal backg0round in mind, the Court turns to the petitioner's claims of ineffective assistance of counsel.

**A. SENTENCING**

The petitioner claims that he was improperly sentenced because instead of the jury finding the amount of crack cocaine beyond a reasonable doubt, the trial court found the amount of crack cocaine by a preponderance of the evidence.

The petitioner appears to be making an Apprendi argument. Apprendi v. New Jersey, 530 U.S. 466 (2000). This argument is without merit. At the time of the petitioner's sentencing, Apprendi had been decided. The Supreme Court held in Apprendi that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490 (emphasis added). In contrast, "a fact increasing the mandatory minimum (but not extending the sentence beyond the statutory maximum)" does not implicate Apprendi concerns. Harris v. United States, 536 U.S. 545, 557

(2002)(plurality opinion)(distinguishing Apprendi and upholding rule in McMillan v. Pennsylvania, 477 U.S. 79 (1986)) (majority opinion)(holding that, following McMillan, a judge may make determination beyond facts alleged in indictment or submitted to jury, which raises minimum sentence). The Fourth Circuit emphasized this distinction in United States v. Promise

> We do not hold that all facts that could serve to increase a defendant's sentence must be found by the jury beyond a reasonable doubt. Instead, we merely hold that the maximum penalty that may be imposed upon a defendant is the maximum penalty allowed by statute upon proof of only those facts alleged in the indictment and found by the jury beyond a reasonable doubt. Once this maximum penalty is established, a fact (sentencing factor) that may increase the actual sentence imposed within that maximum is not subject to the same requirements.

255 F.3d 150, 157 n.5 (4th Cir. 2001)(en banc).

Under Apprendi, the petitioner cannot claim error, because a life sentence is mandatory for Count One conspiracy to possess with intent to distribute cocaine base, a violation of 21 U.S.C. §841(a)(1),(b)(1)(A), and 846. See United States of America v. Sanders, 247 F.3d 139, 150 (4th Cir. 2001). The petitioner's sentence of life imprisonment does not exceed the statutory maximum. Therefore, the petitioner's Apprendi claim is without merit.

The petitioner claims that his sentence violates principles set forth in Blakely v. Washington, 542 U.S. 296 (2004). Recently, the United States Supreme Court reaffirmed those principles. See United States v. Booker, 543 U.S. 220 (2005). The Supreme Court, however, clearly stated that its holding in Booker must be applied "to all cases on direct review." Id. at 25. Subsequent to the decision in Booker, the Fourth Circuit held that Booker "is not available for post-conviction relief for federal prisoners, . . . whose convictions became final before Booker . . . was decided. United States v. Morris, 429 F.3d 65, 72 (2005). Here, the petitioner's case has run its course and his conviction and sentence became final in 2004, "before Booker was issued, and

its approach therefore does not govern [this] collateral proceeding." Id. This § 2255 action is an attempt to collaterally attack his final conviction and sentence. Booker, therefore, is inapplicable to this case. The petitioner argues that Booker is retroactive because it established a new procedural rule rather than a new substantive rule. This argument is without merit. The Fourth Circuit held that Booker announced a new rule of criminal procedure. Id. The petitioner has not shown prejudice, and he is not entitled to relief on this claim.

**B. DOUBLE JEOPARDY**

The petitioner claims that his conviction for multiple counts for firearm violations pursuant to 18 U.S.C. §924(c) constituted double jeopardy. This is an incorrect interpretation of law. Each count occurred in relation to separate drug transactions. The applicable provisions of 18 U.S.C. §924(c)(1) provide:

> Whoever, during and in relation to any crime of violence or drug trafficking . . . uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years. In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years.

In United States v. Raynor, Raynor was charged under 18 U.S.C. §924(c)(1) with multiple firearm violations in separate counts of the same indictment. The Fourth Circuit Court of Appeals held that a conviction of multiple firearm violations, though charged in the same indictment, gives rise to an enhanced sentence. The fact remains that on separate occasions, the petitioner used a handgun during and in relation to the commission of a felony drug offense. "The language and policy of the statute requires that the [subsequent offenses], even if charged in the same indictment as the first, be punished by a mandatory" enhanced sentence. Id. The petitioner fails to show any prejudice, and his allegation is without merit.

**C. JURY CHARGE**

The petitioner argues that the trial court's jury instruction on the 18 U.S.C. §924(c) counts for the use and carrying of a firearm during drug trafficking was in error. The petitioner alleges that the court should have required the jury to find that the petitioner used a different firearm for each firearm violation. This argument is a restatement of the petitioner's double jeopardy claim, and this argument is an incorrect interpretation of law. The applicable provisions of 18 U.S.C. §924(c)(1) provide:

> Whoever, during and in relation to any crime of violence or drug trafficking . . . uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years. In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years.

The statute does not require that a separate firearm be used in each drug transaction. For the reasons stated above, the petitioner fails to show any prejudice and his allegation is without merit.

In the petitioner's direct appeal, his trial counsel filed an Anders brief. Anders v. Cal., 386 U.S. 738 (1967). The Fourth Circuit reviewed the entire record and found no meritorious issues for appeal. Absent an intervening change in law, a petitioner may not ordinarily bring a collateral attack on the basis of issues litigated on direct appeal. See Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976)(cert denied, 429 U.S. 863). The petitioner fails to show prejudice, and he is not entitled to relief.

The Court therefore grants the government's motion for summary judgment and dismisses this action.

**AND IT IS SO ORDERED**.

C. Weston Houck

**C. WESTON HOUCK**
**UNITED STATES DISTRICT JUDGE**

January 25, 2006
Charleston, South Carolina